585 S.E.2d 827

**Marcus Anthony HUNT**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1575–02–2.**

Court of Appeals of Virginia,
Richmond.

Sept. 2, 2003.

Craig W. Stallard, Assistant Public Defender (Office of the Public Defender, on brief), for appellant.

Stephen R. McCullough, Assistant Attorney General (Jerry W. Kilgore, Attorney General, on brief), for appellee.

Present ELDER, FRANK and FELTON, JJ.

ELDER, Judge.

Marcus Hunt entered a conditional plea of guilty for (1) possession of a firearm while in possession of cocaine, in violation of Code § 18.2–308.4(B), and (2) possession of cocaine with the intent to distribute, in violation of Code § 18.2–248. On appeal, Hunt contends the trial court erred in denying his motion to suppress evidence taken from his person, claiming he was searched in violation of Code § 19.2–74 and the Fourth Amendment. We hold the search was unreasonable. Although the officer's non-custodial arrest of Hunt for trespass was lawful, the seizure became a full custodial arrest when the officer made an additional show of authority by telling the handcuffed Hunt that he would search him, and Hunt immediately submitted to that additional show of authority by admitting that he possessed a weapon. Without Hunt's admission, the officer had no basis to frisk, search, or effect a full custodial arrest of Hunt. Thus, Hunt's admission that he possessed a weapon was tainted by the illegal custodial arrest. Accordingly, we hold the evidence should have been suppressed, and we reverse the judgment of the trial court.

## I. BACKGROUND

On February 15, 2002, Officer Ferrell of the Richmond Police Department was working off-duty at the Midlothian

Village apartment complex. The apartment complex has a history of drug problems, shootings, and robberies. At the beginning of his shift, Officer Ferrell reviewed photographs and a list of individuals who had previously been banned from the property. One of those individuals was Marcus Hunt, who was banned from the property on August 30, 1999, two-and-one-half years earlier. Officer Ferrell began patrolling the property with Detective Bronson. During the patrol, they found Hunt, with two other individuals, in a hallway on the third floor of a building within the apartment complex.

Officer Ferrell recognized Hunt as the person in the photograph, handcuffed Hunt, arrested him for trespass, and escorted him to the rental office. The other two individuals with Hunt were also handcuffed and taken to the rental office. Officer Ferrell took Hunt to the rental office for safety reasons. He said people were "hanging out" in the complex and he "[did not] want to arouse the crowd." Furthermore, his paperwork was located in the rental office and it provided a place where they could more easily "sit down and talk."

At the rental office, Officer Ferrell advised Hunt of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and asked Hunt, "Before I search you is there anything I need to know about?" Hunt responded, "Yes. I have a firearm on [sic] my possession," and he indicated the firearm was located in his jumper. Officer Ferrell recovered a loaded .32 caliber revolver, four individually wrapped, "white-like" rocks that were later determined to be cocaine, and two-hundred-eleven dollars in United States currency.

Prior to trial, Hunt filed a motion to suppress evidence. He argued that, pursuant to Code § 19.2–74, Officer Ferrell was required to release him on a summons for misdemeanor trespass. He contended that Ferrell's failure to release him on a summons resulted in an unlawful seizure and, thus, that any physical evidence Officer Ferrell recovered during the seizure should be suppressed. At the hearing, Officer Ferrell was questioned as to whether he planned to effect a custodial

arrest or to release Hunt on a summons. Officer Ferrell replied:

I guess that was going to be based on talking with him and find out if he actually understood that if I was going to release him on a summons he was going to come to court or stay off the property. Based on the past with people as far as trespassing when I write a summons they come back the very next day or very next week. I guess my intention was to take him downtown.

The trial court denied Hunt's motion to suppress. Noting that Officer Ferrell had a picture of Hunt, who previously had been told to stay off the property but did not do so, the court ruled "[it was] reasonable for [Officer Ferrell] to assume that [Hunt is] not going to do what they told him to do." At trial, Hunt entered conditional guilty pleas to charges of possession of a firearm while in possession of cocaine, in violation of Code § 18.2–308.4(B), and possession of cocaine with the intent to distribute, in violation of Code § 18.2–248.[1]

## II. *ANALYSIS*

■ Hunt contends on appeal that the trial court erroneously denied his motion to suppress because the incriminating evidence was seized in a search that violated Code § 19.2–74 and the Fourth Amendment. Hunt argues that the search of his person and subsequent arrest were unlawful because Officer Ferrell failed to release him on a summons, pursuant to Code § 19.2–74, for misdemeanor trespass.[2] We agree.

On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible there-

---

1. On April 1, 2002, in a separate trial in the general district court, Hunt was convicted of misdemeanor trespass as a result of his presence on the apartment complex grounds on the date in question here.

2. Trespassing "upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so," in violation of Code § 18.2–119 is a Class 1 misdemeanor.

from. *Commonwealth v. Grimstead,* 12 Va.App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence[ to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth,* 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). However, we review *de novo* the trial court's application of defined legal standards such as reasonable suspicion and probable cause to the particular facts of the case. *Ornelas,* 517 U.S. at 699, 116 S.Ct. at 1663. "Similarly, the question whether [or to what extent] a person has been seized in violation of the Fourth Amendment is reviewed *de novo* on appeal." *Reittinger v. Commonwealth,* 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).

Code § 19.2–74(A)(1) states in relevant part:

Whenever any person is detained by or is in the custody of an arresting officer for any violation committed in such officer's presence which offense is a violation of . . . any provision of this Code punishable as a Class 1 or Class 2 misdemeanor . . . the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Upon the giving by such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody. However, if any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of § 19.2–82.

Code § 19.2–74(A)(1) mandates the release of persons arrested for Class 1 and Class 2 misdemeanors, unless the offense is drunk driving or a designated offense under Title 46.2. Additionally, an arresting officer " 'shall' issue a summons in the absence of an express exception to the statute[ ], or a reasonable belief that the person arrested will fail to appear in court on his or her promise or fails to

discontinue the unlawful act." *West v. Commonwealth*, 36 Va.App. 237, 240, 549 S.E.2d 605, 606 (2001). Once the officer gives the arrested person the summons and receives from that person his promise to appear at the designated time and place, the officer is required to release him from custody unless the facts warrant otherwise.[3] *Id.* at 241, 549 S.E.2d at 607.

A full custodial arrest, necessary to justify a search of the individual incident to arrest, generally is not permitted under the statute. However, Code § 19.2–74 authorizes a full custodial arrest, justifying an accompanying search, if: (1) the arrest is for one of the listed offenses; (2) the arrestee who is to be released on a summons refuses to abate the unlawful act; (3) the arresting officer believes the arrestee is likely to disregard the summons; or (4) the officer reasonably believes that the arrestee is likely to cause harm to himself or another person.

As the United States Supreme Court explained in *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), the Fourth Amendment also places limitations on searches incident to a citation. In *Knowles*, 525 U.S. at 114, 119 S.Ct. at 486, an Iowa police officer stopped Knowles for speeding and, as permitted by statute, issued him a citation rather than arresting him. After issuing Knowles the citation, the officer conducted a full search of Knowles's car, found a bag of marijuana and a "pot pipe" under the driver's seat, and arrested Knowles for offenses related to his possession of that contraband. *Id.* The Supreme Court considered whether conducting a full search of Knowles's vehicle pursuant to the

---

**3.** The United States Supreme Court decision of *Atwater v. Lago*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), is not applicable here because the state whose law was at issue in *Atwater* does not have a statute parallel to Code § 19.2–74. *Atwater* involved a Texas statute that expressly allowed for the custodial arrest of a person committing a traffic offense and gave discretion to the arresting officer to issue a citation in lieu of arrest. The Supreme Court held that, at least when authorized by statute, a custodial arrest for a very minor criminal offense does not violate the Fourth Amendment. *Id.* at 354, 121 S.Ct. at 1557.

issuance of a traffic citation was consistent with the Fourth Amendment and concluded that it was not. *Id.*

According to the Supreme Court, "two historical rationales [exist] for the 'search incident to arrest' exception [to the Fourth Amendment]: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Id.* at 116, 119 S.Ct. at 487. The Court determined in *Knowles* that neither rationale was present and refused to extend the "search-incident-to-arrest" exception to permit searches incident to the issuance of citations. *Id.* at 118–19, 119 S.Ct. at 488. "Here we are asked to extend that 'bright-line rule' to a situation where the concern for officer safety is not present to the same extent and the concern for destruction or loss of evidence is not present at all. We decline to do so." *Id.* The Court held that "officers have other, independent bases to search for weapons and protect themselves from danger," including the ability to "perform a 'patdown' of [the detainee] upon reasonable suspicion that [he] may be armed and dangerous." *Id.* at 117–18, 119 S.Ct. at 488 (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

The Virginia Supreme Court addressed a similar issue in *Lovelace v. Commonwealth,* 258 Va. 588, 522 S.E.2d 856 (1999). Lovelace and several other men were drinking beer while standing in the parking lot of a convenience store known to be an "open air drug market." *Id.* at 591, 522 S.E.2d at 857. Officers in the area saw a beer bottle fly through the air but did not see who threw it. *Id.* One officer testified that the bottle came from the area where Lovelace was standing. *Id.* Lovelace and the other men were ordered to lie face down on the ground. *Id.* An officer approached Lovelace and asked him his name. *Id.* Lovelace identified himself but remained silent when the officer asked him whether he had any drugs or guns. *Id.* The officer proceeded to "pat down" Lovelace. *Id.* In Lovelace's pocket, he felt something like a plastic bag with lumps in it, but he did not know what was in the bag. *Id.* at 591–92, 522 S.E.2d at 857. The officer nevertheless reached in Lovelace's pocket and retrieved the bag. *Id.* at 592, 522

S.E.2d at 857. The substance was later identified as crack cocaine. *Id.*

In reversing Lovelace's conviction, the Court said:

Initially, we conclude that *Knowles* is applicable. The encounter between Lovelace and the officers, while not involving a traffic offense, was nonetheless similar in nature and duration to a routine traffic stop. We reach this conclusion primarily because the initial reason for detaining Lovelace was his alleged commission of a Class 4 misdemeanor for which the issuance of a summons was authorized under Code § 19.2–74(A)(2). Only if Lovelace had failed or refused to discontinue the unlawful act could the officer have effected a custodial arrest and taken the defendant before a magistrate. Code § 19.2–74(A)(2). However, there is no evidence in the record that Lovelace acted in such a manner. The fact that the officers could have issued only a summons for the alcohol-related offense also negates the Commonwealth's argument that the existence of probable cause to charge Lovelace with drinking an alcoholic beverage in public allowed [Deputy] Womack to search him. After *Knowles*, an "arrest" that is effected by issuing a citation or summons rather than taking the suspect into custody does not, by itself, justify a full field-type search.

Nor do we believe that Code § 19.2–74(A)(2) contemplates a custodial situation equivalent to an actual custodial arrest. Under that statute, a suspect is detained, or in the custody of the police officer, only long enough for the officer to take down the name and address of the person and issue a summons. One of the reasons that the *Knowles* Court did not extend the [*U.S. v.*] *Robinson*[, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)] "bright-line rule" to a "search incident to citation" was because the duration of the encounter between a police officer and a defendant is "relatively brief" when the officer issues a citation. Thus, the threat to officer safety is less.

*Id.* at 596, 522 S.E.2d at 860; *see also West*, 36 Va.App. 237, 549 S.E.2d 605; *Rhodes v. Commonwealth*, 29 Va.App. 641, 513 S.E.2d 904 (1999) (*en banc*).

In the case before us, Hunt was subjected to a search in violation of Code § 19.2–74 and the Fourth Amendment, as interpreted in *Knowles*. Officer Ferrell's initial seizure of Hunt was lawful. Prior to beginning his patrol of the apartment complex, Officer Ferrell reviewed a list of individuals banned from the property along with photographs of the banned individuals. Hunt was among those banned, and Officer Ferrell placed Hunt's photograph in his pocket. Officer Ferrell stated that he remembered Hunt when he saw his photograph. Ferrell had never seen Hunt on the property prior to his arrest but had seen him nearby.

During his patrol of the property, Officer Ferrell came upon a group of three men, including Hunt, in the hallway of a building in the apartment complex. Officer Ferrell announced to Hunt that he was under arrest for committing the offense of misdemeanor trespass in Ferrell's presence, placed him in handcuffs, and escorted him to the property office. Officer Ferrell and Detective Bronson handcuffed Hunt's companions and took them to the rental office, as well. Officer Ferrell did not conduct a safety pat-down frisk of Hunt prior to taking him to the office. In addition, the record contains no indication that Hunt was frisked upon his arrival at the office.

Officer Ferrell testified that he brought Hunt and his companions to the office for multiple reasons. Foremost was safety. The area was known for "hav[ing] a lot of problems with shootings, robberies, drugs, a lot of drug activity." Officer Ferrell indicated that people were "hanging out" in the complex and that he did not "want to arouse the crowd." *See Florida v. Royer*, 460 U.S. 491, 504–05, 103 S.Ct. 1319, 1328, 75 L.Ed.2d 229 (1983) (plurality op.) (recognizing that "there are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention, such as from an airport concourse to a more private area"). Additionally, he noted that his paperwork was located in the rental office and that the office provided a place where he could obtain additional information about Hunt, complete any paperwork, and determine whether to release Hunt on a summons. Code § 19.2–74(A)(1) ex-

pressly permits an officer to take certain misdemeanants into custody long enough to obtain the misdemeanant's promise to appear in the course of issuing a summons and to evaluate, *inter alia*, whether he will discontinue the unlawful act.[4] Thus, up to this point Officer Ferrell's actions were reasonable and lawful.

However, the nature of Officer Ferrell's seizure of Hunt changed when Ferrell said he would search Hunt, asking, "[I]s there anything I need to know about" "[b]efore I search you?", and Hunt responded, "I have a firearm on my [person]." As set out in *Knowles* and *Lovelace*, any authority Officer Ferrell may have had to conduct such a search did not derive from his non-custodial arrest of Hunt. Thus, this exchange signified an intensification of the original seizure. For the reasons set forth below, Officer Ferrell had no basis for frisking Hunt or effecting a full custodial arrest of Hunt. Thus, Officer Ferrell's question about whether Hunt had any contraband and his statement that he intended to search Hunt, followed by Hunt's immediate admission that he possessed a weapon, effectively converted the *lawful non-custodial* arrest into an *unlawful custodial* arrest.

"[A] person is 'seized' ... when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

The general test for a show of authority is whether " 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to ["decline the officers' requests or otherwise terminate the encounter"].' " *[California v.] Hodari D.,* 499 U.S. [621,] 628[, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991)] (quoting *Mendenhall,* 446 U.S. at 554[, 100 S.Ct. at 1877]) (language

---

4. For ease of reference in this opinion, we refer to this procedure as a non-custodial arrest. We recognize that a misdemeanant to be released on a summons is under arrest and is, in fact, in custody prior to release on that summons, but we note that the limitations imposed by that custody are carefully circumscribed by the statute.

in brackets from *[Florida v.] Bostick,* 501 U.S. [429,] 439[, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991)] ...).

*United States v. Letsinger,* 93 F.3d 140, 144 (4th Cir.1996). A Fourth Amendment seizure occurs when the person to whom the official show of authority is made submits to that show of authority. *Hodari D.,* 499 U.S. at 625–26, 111 S.Ct. at 1550. Although it is undisputed that Hunt was seized within the meaning of the Fourth Amendment when Officer Ferrell arrested him for trespassing, these principles are also relevant to determining how the nature of the seizure changed when Officer Ferrell said he would search Hunt and Hunt admitted possessing a weapon.

We hold an officer exerts the show of authority necessary to convert a seizure in the form of a non-custodial arrest or detention into a custodial arrest when he states that he is going to search an individual he has lawfully detained and handcuffed but whom he otherwise has no legal basis to search. *Cf.* 3 Wayne R. LaFave, *Search & Seizure* § 8.2(a), at 642 (3d ed. 1996) ("The claim of ... a right [to search], though not expressly stated, is implicit when the police, instead of asking for permission to make the search, say that they have come to search or that they are going to search." (footnote omitted)). If the detainee submits to that show of additional authority, a heightened seizure—that is, a full custodial arrest—occurs.[5] *Hodari D.,* 499 U.S. at 625–26, 111 S.Ct. at 1550.

---

**5.** Analytically similar is the situation in which a police officer bases his right to search on an individual's purported consent when that consent is given only after the officer falsely asserts a claim of right to conduct such a search. *See Bumper v. North Carolina,* 391 U.S. 543, 549–50, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968). The Commonwealth's "burden [of proving the voluntariness of a particular consent] cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Id.* at 548–40, 88 S.Ct. at 1792. Absent exceptional circumstances, a consent to search given only after an officer falsely asserts a claim of right to conduct such a search is involuntary. 3 LaFave, *supra,* § 8.2(a), at 639–40; *see Jean–Laurent v. Commonwealth,* 34 Va.App. 74, 81, 538 S.E.2d 316, 319 (2000) (where owner of bag opened bag for officer after officer (a) unlawfully seized it, (b) asked owner whether it contained contraband, (c) received response that bag

■ We recognize that the essence of good police work may involve the efforts of an officer, who has effected a *Terry* stop or non-custodial arrest of an individual, to attempt lawfully to obtain information about any other criminal enterprise in which he suspects that individual may be engaged. *See, e.g., Dickerson v. Commonwealth,* 35 Va.App. 172, 181–82, 543 S.E.2d 623, 628 (2001) (holding that where officer lawfully stopped driver for suspected traffic offense and then told him he was free to go, subsequent encounter in which officer asked if driver had anything in his car officer " 'should know about' " was consensual and driver's statement that he had drugs in his car was admissible). However, as the United States Supreme Court has made clear on more than one occasion, " '[the police] may [not] seek to verify [mere] suspicions by means that approach the conditions of [a full custodial] arrest.' " *Kaupp v. Texas,* 53 U.S. 626, ——, 123 S.Ct. 1843, 1845, 155 L.Ed.2d 814 (2003) (holding Fourth Amendment violated where seventeen-year-old suspect, whom officers knew they lacked probable cause to arrest, was "rous[ed] . . . out of bed in the middle of the night [in January] with the words 'we need to go,' " handcuffed, and taken first to the crime scene and then to an interrogation room at law enforcement headquarters while wearing only boxer shorts and a t-shirt) (quoting *Royer,* 460 U.S. at 499, 103 S.Ct. at 1325). "At some point in the investigative process, police procedures can qualitatively and quantitatively be so intrusive with respect to a suspect's freedom of movement and privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments." *Hayes v. Florida,* 470 U.S. 811, 815–16, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985), *quoted with approval in Kaupp,* —— U.S. at ——, 123 S.Ct. at 1846.

---

contained knife, and (d) stated that "she needed to see [knife]," Commonwealth showed " 'mere submission to a claim of lawful authority' " rather than consent to search that was " 'freely and voluntarily given,' " and denial of motion to suppress was error (quoting *Royer,* 460 U.S. at 497, 103 S.Ct. at 1324)); *see also State v. Allen,* 188 Mont. 135, 612 P.2d 199, 205 (1980) (holding defendant did not voluntarily consent to search where he "vehemently protested the search" and "helped" the officers "only after [they] indicated they were going to search anyway").

■ Here, although Officer Ferrell lawfully detained and handcuffed Hunt for the purpose of issuing him a summons for trespassing, Ferrell made an *additional* show of authority when he asked Hunt, "[I]s there anything I need to know about" "[b]efore I search you?" While still under detention in the course of that non-custodial arrest, Hunt submitted to Officer Ferrell's additional show of authority by immediately responding that he had a firearm in his possession.[6] Hunt was not told he had a right to refuse the search or that he would be released from custody upon his acceptance of the summons and promise to abate the unlawful act. Under these facts, we hold that "the detention of [Hunt] was in important respects indistinguishable from a traditional arrest." *Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979) (finding Fourth Amendment violation where police lacked probable cause but made functional equivalent of arrest because, instead of "question[ing] [suspect] briefly where he was found," police took him "from a neighbor's home to a police car, transported [him] to a police station, . . . placed [him] in an interrogation room[, and] . . . never informed [him] that he was 'free to go' ").

The facts in Hunt's case are distinguishable from those in

---

**6.** We agree with the dissent that what matters is "the legality of Hunt's detention at the moment he revealed that he had a gun on his person." However, we disagree with the dissent's assertion that "the legality of the officer's subjective intent to conduct a future search" was irrelevant to that determination under the facts of this case.

Although an officer's "[s]ubjective intentions play no role in *ordinary* . . . Fourth Amendment analysis," *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) (emphasis added), those intentions are "relevant to an assessment of the Fourth Amendment implications of police conduct . . . *to the extent that that intent has been conveyed to the person confronted*," *Michigan v. Chesternut*, 486 U.S. 567, 576 n. 7, 108 S.Ct. 1975, 1981 n. 7, 100 L.Ed.2d 565 (1988) (emphasis added).

Here, Officer Ferrell clearly conveyed to Hunt his intent to search and did so immediately before Hunt admitted possessing a weapon. Thus, Officer Ferrell's communicated intent was highly relevant in evaluating "the legality of Hunt's detention at the moment he revealed that he had a gun on his person."

*United States v. Letsinger,*[7] in which police engaged in a consensual encounter with a train passenger while he stood in the doorway of his compartment aboard a moving train. 93 F.3d at 143–46. The Fourth Circuit held an officer's "statement that he 'was going to detain [Letsinger's] bag,' " located inside his compartment, was insufficient, standing alone, to establish a seizure of the bag. *Id.* at 144–45. The court assumed the statement constituted a sufficient show of authority[8] but concluded that no seizure occurred because the officers took no steps to physically seize the bag and continued to request consent to search while Letsinger remained standing in the doorway of his compartment and gave no verbal or physical indication that he intended to relinquish the bag. *Id.* Thus, held the court, Letsinger did not submit to the show of authority. *Id.* at 145; *see also United States v. Scheetz,* 293 F.3d 175, 182–84 (4th Cir.2002) (where police erected road sign indicating drug interdiction point that may have been unconstitutional show of authority, defendant was not illegally seized because, instead of submitting to show of authority, he made illegal u-turn and fled prior to reaching checkpoint, and traffic infraction provided basis for stop of car).

In Hunt's case, by contrast, Officer Ferrell's statement of his intent reflected an intent to search Hunt's person rather than to seize his bag. Further, Officer Ferrell's statement was uttered, not during a consensual encounter, but while Hunt was in handcuffs and under detention for trespassing. Finally, instead of remaining silent, challenging Officer Ferrell's authority, or attempting to convince Officer Ferrell to change his mind about conducting a search, Hunt immediately submitted to Officer Ferrell's show of authority by admitting

---

7. Even if not distinguishable, *Letsinger* would not be controlling. *See, e.g., Abateco Servs., Inc. v. Bell,* 23 Va.App. 504, 514–15, 477 S.E.2d 795, 799–800 (1996) (discussing Fourth Circuit case on Fourth Amendment expectation of privacy issue as "persuasive" rather than "control[ling]" authority).

8. As a predicate matter, the court assumed without deciding "that a complied-with show of authority can constitute a 'seizure' of an object from one's immediate custody or control." 93 F.3d at 145.

he had a firearm on his person. We hold that the circumstances surrounding Hunt's admission establish the requisite show of authority and submission as a matter of law. Thus, Hunt was under full custodial arrest at that time.

Officer Ferrell would have been entitled to frisk Hunt for weapons if he had had reasonable suspicion to believe Hunt was armed and dangerous before he verbalized his intention to search and Hunt submitted to that show of authority by admitting he possessed a weapon. *See Knowles,* 525 U.S. at 118, 119 S.Ct. at 488. Also, Officer Ferrell could reasonably have conducted a full search of Hunt if Officer Ferrell had had a valid basis for effecting a full custodial arrest of Hunt before he verbalized his intent to search and Hunt admitted possessing a weapon. However, the facts known to Officer Ferrell before he verbalized his intent to search and Hunt admitted possessing a weapon were insufficient to provide him with either reasonable suspicion for a weapons frisk or a basis for effecting a full custodial arrest.

Officer Ferrell's questioning of Hunt occurred in the rental office. Officer Ferrell was accompanied by Detective Bronson, and the only other people present were appellant's companions, who, like appellant, were in handcuffs. Officer Ferrell articulated no basis, other than Hunt's likely trespass, for suspecting that Hunt himself, or either of his two companions, was armed. *Sattler v. Commonwealth,* 20 Va.App. 366, 369, 457 S.E.2d 398, 400 (1995) ("In every encounter, *'Terry* requires reasonable, *individualized* suspicion before a frisk for weapons can be conducted.'" (quoting *Maryland v. Buie,* 494 U.S. 325, 344 n. 2, 110 S.Ct. 1093, 1098 n. 2, 108 L.Ed.2d 276 (1990)) (emphasis added)). Thus, prior to when Officer Ferrell said he intended to search and Hunt admitted he had a weapon, Officer Ferrell lacked reasonable suspicion to frisk Hunt for weapons. For the same reason, Officer Ferrell also lacked probable cause to search or arrest Hunt for any offense related to his possession of a weapon.

Thus, the reasonableness of the search depended upon whether it occurred incident to a valid custodial arrest for

trespass. We hold the record does not reflect the existence of any of the exceptions recognized in *Knowles* or Code § 19.2–74 that would have authorized Officer Ferrell to effect a full custodial arrest for trespass rather than release Hunt on a summons. No reason existed to search Hunt in order to preserve evidence, as the trespass was complete. Additionally, trespass is not one of the designated misdemeanor offenses for which Code § 19.2–74 permits custodial arrest rather than release on a summons.

Despite the provisions of Code § 19.2–74, Officer Ferrell never provided Hunt a written summons or an opportunity to leave the property to abate the unlawful act. The mere fact that Hunt had trespassed on one occasion two-and-one-half years earlier, standing alone, was insufficient as a matter of law to support the trial court's finding that Hunt would "fail or refuse to discontinue the unlawful act." Although Hunt had been "banned" from the property two-and-one-half years earlier, no evidence established that he had been convicted or even charged criminally for that act. Further, the evidence showed that the apartment complex had come under new management since that time.[9] This evidence did not support a finding that Hunt would refuse to leave the property after Officer Ferrell issued him a summons or that he would trespass again in the immediate future despite having received the summons. That Officer Ferrell knew many other trespassers he released on summons returned to the property soon thereafter did not permit him to conclude that Hunt would do so, as well. *Cf. Sattler*, 20 Va.App. at 369, 457 S.E.2d at 400 (noting weapons frisk requires " '*individualized* suspicion' " (quoting *Buie*, 494 U.S. at 344 n. 2, 110 S.Ct. at 1098 n. 2) (emphasis added)). Finally, Officer Ferrell lacked a substantial basis to conclude

---

9. Officer Ferrell testified the new management sought to enforce any banishments recognized by the prior management. However, no evidence established that Hunt was aware of this policy. Thus, the fact that Hunt returned to the property two-and-one-half years later, after the property had come under new management, did not establish that he would refuse to leave the property to abate the unlawful trespass after being informed that his banishment remained in effect.

that Hunt was likely to disregard the written summons or to harm himself or another person. We hold Officer Ferrell's statement that he would search Hunt was not valid as a search incident to a custodial arrest for trespass.

Thus, the full custodial arrest was invalid, and "well-established precedent requires suppression of [Hunt's statement] unless [it] was 'an act of free will [sufficient] to purge the primary taint of the unlawful [arrest].'" *Kaupp,* —— U.S. at ——, 123 S.Ct. at 1846 (quoting *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963)). The state bears the burden of "[d]emonstrating such purgation," and "[r]elevant considerations include observance of *Miranda,* 'the temporal proximity of the arrest and the [statement,] the presence of intervening circumstances, and . . . the purpose and flagrancy of [any] official misconduct.'" *Id.* (quoting *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975) (citation and footnote omitted)).

Here, Hunt received his *Miranda* warnings,[10] and no evidence indicates Officer Ferrell engaged in any intentional misconduct. However, Hunt's admission that he possessed the firearm came immediately on the heels of Officer Ferrell's statement that he would search Hunt. Further, Ferrell's statement implied that Hunt would fare better if he admitted possessing the contraband than he would if Officer Ferrell found the contraband himself while executing the search. Finally, no evidence indicated that Hunt would have admitted possessing the firearm absent Officer Ferrell's statement that he would search Hunt. Under these circumstances, we hold the evidence fails to establish Hunt's admission "was 'an act of free will [sufficient] to purge the primary taint of the unlawful [arrest].'" *Id.* (quoting *Wong Sun,* 371 U.S. at 486, 83 S.Ct. at 416–17).

---

**10.** Hunt received his *Miranda* rights and does not contest the voluntariness of his statement in the context of *Miranda.*

### III.

Because the facts available to Officer Ferrell independent of his statement of intent to search and Hunt's admission that he had a weapon were insufficient to provide Officer Ferrell with either reasonable suspicion for a weapons frisk or a basis for effecting a full custodial arrest, we hold that Officer Ferrell's discovery of the weapon and cocaine occurred pursuant to an unreasonable search. Because the evidence failed to prove Hunt's admission to possessing the weapon was sufficiently purged of the taint of the illegal arrest, we hold the trial court erroneously denied the motion to suppress. Without the firearm or the cocaine, the evidence was insufficient to support Hunt's convictions for possession of cocaine with intent to distribute and possession of a firearm while in possession of cocaine. Thus, we reverse appellant's convictions and dismiss the indictments.

*Reversed and dismissed.*

FELTON, J., dissenting.

I would affirm the trial court's judgment in denying Hunt's motion to suppress the evidence obtained in the search following his arrest for trespass, and affirm Hunt's convictions for possession of cocaine with the intent to distribute and possession of a weapon while in the possession of cocaine.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.' " *McGee v. Commonwealth,* 25 Va.App. 193, 197, 487 S.E.2d 259, 261 (1997) *(en banc)* (citation omitted). "We review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." *Hayes v. Commonwealth,* 29 Va.App. 647, 652, 514 S.E.2d 357, 359 (1999) (citation omitted). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the

inferences drawn from those facts by resident judges and local law enforcement officers." *McGee,* 25 Va.App. at 198, 487 S.E.2d at 261 (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). *Lovelace v. Commonwealth,* 37 Va.App. 120, 124, 554 S.E.2d 688, 689 (2001).

In Hunt's view, Officer Ferrell simply should have taken his name and address and issued a summons to him, directing that he appear at a stated date and time. He argued to the trial court and on appeal that Officer Ferrell had already made the decision to place him under custodial arrest prior to the search, in violation of Code § 19.2–74 and the Fourth Amendment's proscription against conducting a "search incident to citation" as articulated in *West v. Commonwealth,* 36 Va.App. 237, 242, 549 S.E.2d 605, 607 (2001), and *Rhodes v. Commonwealth,* 29 Va.App. 641, 645, 513 S.E.2d 904, 906 (1999).

At trial, when Officer Ferrell was asked his reasons for taking Hunt to the office, he testified:

Number one for safety reasons. Out in the apartment complex you have people hanging out. We didn't want to arouse the crowd. We had paper work inside, [we could] sit down and talk and not worry about people coming to our location. [We] [d]idn't want to take the chance of someone running away from us, or lose information, [and we wanted to] obtain information to process the parties.

When asked whether he planned to release Hunt on a summons at the apartment complex, Officer Ferrell testified:

I guess that was going to be based on talking with him and find [sic] out if he actually understood that if I was going to release him on a summons he was going to come to court or stay off the property. Based on the past with people as far as trespassing when I write a summons they come back the very next day or very next week. I guess my intention was to take him downtown.

Hunt suggests that Officer Ferrell's testimony, "I guess my intention was to take him downtown," is determinative that

Hunt was already in a custodial arrest posture at the moment they arrived in the rental office, and at that point his detention was unlawful and in violation of Code § 19.2–74. He therefore asserts that the subsequent search was in violation of his statutory and Fourth Amendment rights and that the evidence seized during the search should be suppressed.

In my view, the evidence supports Officer Ferrell's decision to place Hunt under custodial arrest given the totality of the circumstances surrounding his arrest for trespass in this particular incident. In enacting Code § 19.2–74, the General Assembly authorized an arresting officer to exercise his discretion, in specific instances, to place a person in full custodial arrest rather than releasing that person on a summons: i.e., where the officer has a reasonable belief that the person would fail to appear to answer the summons; where the officer reasonably believes that the person is likely to cause harm to himself or others; or where the officer has a reasonable basis to believe the person would fail or refuse to discontinue the unlawful act. Code § 19.2–74(A)(1).

The trial court specifically asked Officer Ferrell about his experience of releasing banned trespassers at the apartment complex. He responded that many trespassers he released on a summons returned to the property. "I have one guy that I wrote a ticket to twice within two weeks. Another officer got him the next day . . . ."

The trial court heard testimony that the apartment complex was located in a high crime area, where violent crimes and illegal drug activity were commonplace. The uncontradicted testimony was that the owners of the apartment complex employed off-duty police officers to "clean up the drug activity and to make it a better environment for the people who lived in the complex." Two months prior to Hunt's arrest, a "girl got [sic] shot and killed." Additionally, the trial court heard that there was a "drug corner across from the apartment complex." The officer had recently seen Hunt in the vicinity of the apartment complex from which he had been previously banned. Prior to beginning his patrol of the property on the

day in question, Officer Ferrell specifically searched for and located Hunt's picture and name among those who had been banned from the property. When he arrested Hunt, Officer Ferrell assured that Hunt was indeed the same person whom he had recently seen in the vicinity and who had been banned from the property. As the trial court noted, "He's [Officer Ferrell] got a picture of the man that's [sic] been told to stay off the property and he's back over there. I think it's reasonable for him to assume that he's not going to do what they told him to do." In other words, the trial judge reasonably concluded that the officer was correct in deciding not to release Hunt on a summons because he could reasonably conclude that Hunt would not obey the summons and would not stay off the property.

Based on his training and experience, and especially his experience at this particular apartment complex, Officer Ferrell was reasonable in arresting Hunt, placing him in handcuffs, and removing him to the rental property office for safety reasons. Officer Ferrell was concerned that a crowd would gather while he was dealing with Hunt and his companions, creating a security concern if he continued to complete the arrest process there.

The record reflects that immediately on arrival at the rental office, and prior to removing the handcuffs from Hunt or to obtaining additional information from him as part of the arrest process, Officer Ferrell gave Hunt the *Miranda* warnings. He told Hunt that he intended to search him, and asked Hunt if there was anything he should know prior to performing the search. Hunt informed Officer Ferrell that he had a gun in his clothing.

At that time, the officer had authority, indeed the responsibility, to search Hunt to locate and remove the weapon and to conduct a full search incident to a custodial arrest for trespass. In summary, the officer knew that Hunt was armed with a gun, that Hunt had just trespassed on property from which he had been specifically banned, and that the property was in an area that had been the site of violent criminal activity, includ-

ing a recent fatal shooting. Hunt thus posed a danger of harm to both the officer and to others in the apartment complex. Officer Ferrell could not be reasonably expected to release the armed Hunt on a summons and to tell him to go on his way.

Hunt's statement to Officer Ferrell was voluntary, non-coerced, and followed the *Miranda* warnings.[11] It was obtained during a limited period when Hunt was lawfully detained to process him on the arrest for trespass. Because Hunt was lawfully detained, and voluntarily admitted that he had a weapon *before* Officer Ferrell had an opportunity to complete the process for the trespass arrest, the search did not violate the release on summons provisions of Code § 19.2-74 or the Fourth Amendment prohibition of "search incident to citation."

In *Lovelace v. Commonwealth*, 258 Va. 588, 596, 522 S.E.2d 856, 860 (1999), the Supreme Court held that "an 'arrest' that is effected by issuing a citation or summons rather than taking the suspect into custody does not, by itself, justify a full field-type search." However, the Court recognized that "an encounter between [police] and an individual ... may involve some degree of danger to the officer or ... need to preserve or discover evidence sufficient to warrant an additional intrusion," "limited to what is necessary to answer the concerns raised by ... either historical rationale." *Id.* at 594, 522 S.E.2d at 859; *Farrow v. Commonwealth*, 31 Va.App. 517, 520–21, 525 S.E.2d 11, 13 (2000). In short, a police officer, in limited circumstances, may impose some further intrusions, consistent with the Fourth Amendment, if either historical

---

**11.** Hunt did not contest at trial or on brief that the post-*Miranda* warning statement was voluntarily given. He only contended that he should have been released on a summons immediately following his arrest for trespass and that the statement he made to Officer Ferrell was during his period of unlawful detention. Generally, statements made during a period of unlawful detention are inadmissible, even following *Miranda* warnings. *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *Watson v. Commonwealth*, 19 Va.App. 659, 665, 454 S.E.2d 358, 362 (1995).

rationale for the "search incident to arrest" exception is present.[12] *Lovelace*, 258 Va. at 594, 522 S.E.2d at 859.

In my judgment, the lawful detention of Hunt stemming from his arrest did not become an unlawful detention simply because the officer told him he intended to search him, irrespective of whether that anticipated search was invalid under the summons/custodial arrest dichotomy. It is the legality of Hunt's detention at the moment he revealed that he had a gun on his person, not the legality of the officer's subjective intent to conduct a future search, which matters.[13]

Officer Ferrell was reasonable in the exercise of his discretion within Code § 19.2–74 to place Hunt in a full custodial arrest based on the officer's experience and training, in particular his experience at this location. Furthermore, he was reasonable in determining that Hunt would not do what he was told to do if released on a summons.

I would, therefore, affirm the trial court's denial of the motion to suppress the evidence seized, and affirm Hunt's

---

**12.** The historical rationales justifying a full, field-type search include the need to disarm the suspect in order to take him into custody, and the need to preserve evidence for later use at trial. *See Knowles v. Iowa*, 525 U.S. 113, 116, 119 S.Ct. 484, 487, 142 L.Ed.2d 492 (1998).

**13.** *See United States v. Scheetz*, 293 F.3d 175 (4th Cir.2002). Police erected signs reading "K–9 check point ahead." Such a checkpoint would appear to be unlawful under *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), but the defendant did not stop at the checkpoint. Instead, he made a U-turn creating reasonable suspicion for the police to stop the vehicle. Thus any subjective intent to illegally stop the defendant at the checkpoint became irrelevant when the defendant supplied a factual basis for the stop.

*See also United States v. Letsinger*, 93 F.3d 140 (4th Cir.1996). In a consensual encounter, officers informed the defendant that they were "going to detain his bag" and that "he could retrieve it later." Without touching the bag, the officers continued to converse with the defendant who acknowledged that he had a small amount of marijuana in the bag. Following this admission, the officers searched the bag and found a large amount of crack cocaine. The court held that, under the circumstances of the case, no seizure took place until the officers physically touched the bag, which occurred only after the defendant's incriminating statement gave them probable cause to seize and search the bag.

convictions of possession of cocaine with the intent to distribute and possession of a firearm while in possession of cocaine.