## Norfolk

RONALD E. CRUMBLE

v.

COMMONWEALTH OF VIRGINIA

No. 0156-85

Decided May 6, 1986

COUNSEL

R.L. Shrecengost (Brooks and Shrecengost, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Ronald Earl Crumble (appellant) appeals from the October 12, 1984 trial court judgment which convicted and sentenced him upon separate indictments charging first-degree murder and felonious firearm use in connection with the June 29, 1984 death of Tyrone Merritt (decedent). The judgment followed an August 29, 1984 trial before the court sitting without a jury.

Appellant asserts two issues on this appeal: (a) whether the Commonwealth presented sufficient evidence at trial to sustain the convictions; and (b) whether the trial court erred by allegedly refusing to allow defense trial counsel to give a closing argument on appellant's behalf, or by allegedly failing to cause said argument, if it occurred, to be properly recorded pursuant to Code § 19.2-165.

## I. THE ARGUMENTS

We shall first review appellant's allegations regarding closing arguments. Appellant's counsel in this court did not represent appellant at trial. His assertions on appeal are twofold. First, he claims the clerk erroneously failed to include in the record on appeal a transcription of any closing arguments. He asserts that such failure constitutes grounds for reversal because he is unable

to obtain a fair review of the matters which occurred in the trial court. Secondly, based on information received from appellant, he claims that the trial court refused appellant's trial counsel the right to make a final argument on behalf of appellant at the conclusion of the evidence.

During the October 17, 1985 oral arguments held in this Court, neither counsel for appellant nor the Commonwealth responded with assurance to the question whether closing arguments occurred. Both denied that the attending court reporter recorded final arguments, if any were made. The record as then before us only made reference to the fact that closing arguments were made. Noting the inconsistency in appellant's argument, counsel's statements and the reporter's notes, on December 17, 1985, pursuant to Code § 8.01-675.4, we directed the clerk of the trial court to cause that portion of the trial court record consisting of the court reporter's recordations of closing arguments to be transcribed and forwarded to us for review. The clerk responded January 22, 1986 with a transcription of said arguments as presented at the August 29, 1984 trial. Our review of this transcript reveals that defense trial counsel argued the case at the close of the evidence, that said counsel entered no objections during the prosecution's closing argument, and that the court reporter duly recorded these proceedings pursuant to Code § 19.2-165.

These findings negate appellant's allegations in support of his objection to the content of this record and refute his assertion that appellant's trial counsel was denied the right to make closing argument. These contentions, therefore, are without merit.

## II. THE EVIDENCE

When passing upon the sufficiency of the evidence to support a conviction, we must view the evidence in the light most favorable to the Commonwealth, granting it all reasonable inferences fairly deducible therefrom. *Gooden* v. *Commonwealth*, 226 Va. 565, 571-72, 311 S.E.2d 780, 784 (1984). The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless plainly wrong or without evidence to support is. Code § 8.01-680; *Evans* v. *Commonwealth*, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975).

The record reveals that during the late evening hours of June 28, 1984, appellant agreed to sell a quantity of marijuana to three men, including decedent, Ronnie Hughes and a man named Bowen. To conclude the proposed sale, appellant, decedent and the other two men went to the apartment of appellant's friend Larry Patterson, which was located in the vicinity of 25th Street and Jefferson Avenue in Newport News, where they met briefly outside with Patterson. While Patterson waited outside with the prospective buyers, appellant went inside and assembled two packages of marijuana weighing approximately one-half ounce each. During the wait Bowen produced a large knife and threatened Patterson, who fled the scene. When appellant returned, decedent and his two companions robbed him at knifepoint of his marijuana and some $30 cash, and then ran from the area where the robbery occurred.

After the robbery, appellant and Patterson walked together to 37th Street and located the parked car of Alonzo Wormley, a mutual acquaintance. Patterson testified at trial that appellant appeared extremely angry as the two walked together. Wormley came to his car shortly after midnight on June 29, 1984, following his work shift at a local shipyard. Appellant then borrowed from Wormley a loaded .357 magnum caliber pistol, which Wormley normally kept in the trunk of his car. Wormley then drove appellant and Patterson back to the 25th Street area.

Appellant located decedent on the street and confronted him at gunpoint concerning the robbery. The two men heatedly exchanged words until appellant fired the weapon into decedent's chest. Decedent attempted to flee as appellant fired a second shot. He was able to travel only some seventy-five to one hundred yards before he fell dead. After the shooting, appellant met with Wormley, returned the pistol, and had Wormley drive him to a location near 76th Street where his friends and relatives kept him informed of events at the shooting scene.

Newport News police responded to reports of shots fired and found decedent's body shortly after 1:55 a.m. An investigation of the death, headed by Detective C.D. Spinner, was immediately launched by the Newport News police. On-scene interviews with various witnesses resulted in Spinner receiving appellant's name as a suspect.

At approximately 3:00 a.m., appellant's relatives confirmed to him that decedent was dead, whereupon he telephoned Newport News police detective R.F. Dawes at his home and asked him to help with a "problem." Appellant explained to Dawes about the robbery but lied about how he had obtained the pistol. Dawes related that appellant gave the following account of the on-scene events: Appellant stated that the gun was his and that he had retrieved it from his 24th Street home before confronting decedent on 25th Street; that when he demanded his property from decedent, appellant pointed the cocked pistol at him; that decedent asked appellant if he intended to shoot him and appellant responded: "I'm going to do whatever I need to," or, "whatever is necessary;" that decedent grabbed him "by the shoulder, he [appellant] spun around, the gun went off. He [appellant] said that he did not know then that he had shot him [decedent], that the Merritt subject [decedent] had took off and run," and appellant followed him firing a second shot into the air. (clarifications added).

Following this conversation with appellant, Dawes communicated with police headquarters and upon learning of Spinner's investigation discussed the matter with him. Later that morning, Dawes acted as an intermediary when appellant submitted himself to Spinner's custody. Once with Spinner, appellant directed the police to a grassy field near 25th Street and told them that he had thrown the pistol there. When an extensive search for the gun failed, appellant contacted Wormley who met with him and Spinner and surrendered the gun.

In a typed statement given to Spinner and taken at police headquarters that morning, appellant continued to claim that he owned the gun and that he had thrown it into the field. He then explained that after the shooting he told Wormley to retrieve the gun, which he did before police began their search. In this statement, appellant attempted to refine his recollection of the shooting. He indicated that upon his armed confrontation with decedent and an exchange of words, he "turned around" and that is when decedent grabbed his shoulder and "my hand went back and hit him and the gun went off."

At the trial appellant explained his initial falsehoods to police about the pistol as an attempt to protect his friend Wormley. He again attempted to explain that shooting decedent was an

accident:

> Well, I approached Tyrone Merritt, asked him to give me back what was mine and he started talking a lot of junk, so I turned around and headed back to the car and he snatched me by my right shoulder and spinned me around. As he spinned me, my hand went up and hit him and the gun went off.

He acknowledged that he obtained the gun "to try to get what was mine," but at the same time maintained that the gun was for his protection only and that he did not expect to see any of his three assailants again that morning. He explained that the second shot was fired into the air as he chased decedent both because he was scared and because he wished to frighten decedent.

■ We hold that the Commonwealth presented ample evidence from which the trial court reasonably concluded that appellant committed first-degree murder by use of a firearm. The several statements by appellant describing the circumstances surrounding the shooting were both inconsistent and illogical. Appellant's statement regarding the discharge of the weapon strained credulity. In *Randolph v. Commonwealth*, 190 Va. 256, 56 S.E.2d 226 (1949), the Court made the following statement which we note is equally applicable to a case such as this when the court sits as fact-finder:

> The jury were not required to accept the defendant's statement as to how the killing occurred simply because the defendant said it happened that way and no witnesses testified to the contrary. If from the improbability of his story and his manner of relating it, or from its contradictions within itself, or by the attending facts and circumstances, the jury are convinced that he is not speaking the truth, they may reject his testimony, even though his reputation for truth is not attacked and he is not contradicted by other witnesses.

*Id.* at 263, 56 S.E.2d at 229; *see also Braxton v. Commonwealth*, 195 Va. 275, 279, 77 S.E.2d 840, 842 (1953).

The trial court reasonably inferred from the evidence that appellant, after being robbed by decedent, became angry, deliber-

ately went to Wormley to obtain a gun for the purpose of confronting decedent and "to do what was necessary" to secure the return of the drugs and money, returned to find one or more of his assailants, encountered and confronted decedent, and, upon decedent's refusal to return the items, fired the weapon directly into decedent's chest, killing him. The manner of decedent's death and its surrounding circumstances gave the trial court ample support for its conclusion that appellant acted willfully, deliberately and with premeditation when he killed decedent. *See Clozza* v. *Commonwealth*, 228 Va. 124, 134, 321 S.E.2d 273, 279 (1984); *Hairston* v. *Commonwealth*, 217 Va. 429, 432, 230 S.E.2d 626, 628 (1976).

Accordingly, finding no error in the judgment appealed from, that judgment is affirmed.

*Affirmed.*

Barrow, J., and Hodges, J., concurred.