**Norfolk**

ARNOLD BURGESS

v.

COMMONWEALTH OF VIRGINIA

No. 0846-91-1

Decided August 18, 1992

COUNSEL

Albert W. Patrick, III (Cumming, Hatchett, Moschel & Patrick, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Arnold Burgess appeals from his convictions for grand larceny and possession of cocaine. Burgess claims the trial judge erred (1) in dismissing his motion to suppress cocaine found in his jacket, and (2) in finding sufficient evidence to convict him of grand larceny. For the reasons that follow, we affirm the ruling on the motion to suppress and we reverse the grand larceny conviction.

I.

At 1:15 in the morning, police officers Mezo and Kangas responded to a complaint of vandalism in progress on a motel's parking lot. Upon arriving, the officers observed three individuals in the parking lot. One man, David Turner, was seated behind the wheel of a Mazda automobile. Burgess was standing outside the automobile with his arm leaning on the opened passenger door. The other man, who is unidentified on the record, was questioned and released. Mezo questioned Turner and Burgess, obtaining

their addresses, birth dates, and social security numbers. Mezo testified that he made the following additional inquiries of Burgess:

Q Specifically directed to this defendant, Mr. Arnold Burgess, what was it that you asked him and what was his response?

A I asked Mr. Burgess why he was at the McThrift Motor Inn this evening, he said he was up there to see some friends. Then I asked Mr. Burgess whose vehicle that he was with. And he said Mr. Lewis Johnson. Then I asked him who Mr. Lewis Johnson was or where he went. He said, he didn't know where he lived and he didn't know where he went.

\* \* \*

Q And what was your questioning of Mr. Burgess at that point in time other than asking him his name, address and Social Security number?

A We asked him what occasion he had come to McThrift Motor Inn that evening. And we asked him whose car he was sitting in.

Q You asked him whose car he was sitting in, and he responded that he was sitting in a car?

A No, sir, he didn't. I asked him whose car that was that he was beside.

While Mezo questioned Burgess and Turner, the other officer approached the Mazda and observed that the ignition had been altered or "punched." Because the officers concluded that the Mazda might have been stolen, they frisked Turner and Burgess and placed them inside the police vehicle. The officers detained Burgess and Turner for forty minutes before obtaining verification that the Mazda had been stolen. While waiting for verification, Mezo also learned that Burgess had given him false identification. Mezo arrested Burgess and Turner for possession of a stolen automobile.

During further questioning at the station, Burgess stated that he did not know that the Mazda had been stolen. He gave no

additional information about Lewis Johnson and could state no reason why he gave Mezo a false name. When Burgess was searched at police headquarters, two plastic envelopes of cocaine were discovered in his coat pocket. He was tried and convicted of larceny of the Mazda and possession of cocaine.

## II.

Burgess first claims that the trial judge erred in failing to grant his motion to suppress the cocaine that was discovered in his jacket after his arrest. Burgess claims his detention in the police vehicle after the police began to suspect the Mazda had been stolen constituted a full custodial arrest without probable cause, thus invalidating the subsequent formal arrest and rendering inadmissible any contraband discovered during the search incident to arrest.

It is well established that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is not probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). The record indicates that the police articulated facts which supported their initial detention of Burgess. The officers had received a report of vandalism and glass being broken in the parking lot. When the police approached Burgess, he was standing in the door of a Mazda opposite a row of cars where the officers had seen broken glass on the ground. As one officer was questioning Burgess, the other officer detected that the Mazda's ignition had been "punched" so as to allow it to be driven without a key. The officers could reasonably assume that the Mazda may have been stolen and that Turner, who was sitting behind the wheel, may have been implicated in its theft. After Burgess told the officers the Mazda belonged to Lewis Johnson, who was not the person behind the wheel and whose address Burgess could not supply, the officers also could have reasonably concluded that Burgess may have known something about the circumstances. With these known facts the officers had a basis upon which to detain Burgess while attempting to obtain additional information. " '[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly, while attempting to obtain additional information.' " *DePriest v. Commonwealth*, 4 Va. App. 577,

585, 359 S.E.2d 540, 544 (1987), *cert. denied*, 488 U.S. 985 (1988) (quoting *Hayes v. Florida*, 470 U.S. 811, 816 (1985)).

█ "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Burgess was detained for approximately forty minutes. Mezo testified that after detaining Burgess by placing him in the back of the police vehicle, he questioned Burgess and Turner about the reported vandalism and tried to ascertain if the Mazda had been reported stolen. When Officer Mezo learned the computers were down, he used the telephone in the motel's office to call police headquarters to determine if the Mazda had been reported stolen. Burgess does not claim that the police did not pursue their investigation diligently, nor does the evidence suggest any reason to believe the police could have more quickly determined whether the Mazda was stolen. The forty minutes delay was attributable to computer failure rather than any deliberate delay on the part of the police officers.

During the detention, the officers also learned that Burgess had not given them his correct name. He was found "standing next to [the stolen Mazda] with the door open with his arm on the window" and talking to a man behind the wheel who Burgess did not identify as the owner. Burgess gave the name of another person as the one who possessed the Mazda, did not know any other details about the person he identified, and gave the police a false name.

As an articulated legal standard, probable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians. In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.

*Hollis v. Commonwealth*, 216 Va. 874, 876-77, 223 S.E.2d 887, 889 (1976).

We cannot say the trial judge erred in concluding that the officers had probable cause to make the arrest. Thus, the trial judge did not err in refusing to suppress the cocaine found in the search of Burgess's jacket.

## III.

Although the trial judge did not err in finding the police had probable cause to arrest Burgess, the evidence is insufficient to prove that Burgess is guilty of larceny of the Mazda. The evidence proved that the Mazda was stolen in Hampton, Virginia, on December 3, 1990. Nine days later, Burgess was seen standing at the passenger side door talking to Turner who was sitting behind the wheel of the stolen Mazda. After Burgess' arrest, "he stated that he had been picked up in the car [and] did not know it had been stolen." The record contains no evidence to justify an inference that he knew the automobile was stolen. Burgess denied knowing that the Mazda was stolen. That Burgess was in the stolen Mazda nine days after the theft does not prove that Burgess either stole the Mazda on December 3 or exercised dominion or control over the vehicle at any time. *See Nelson v. Commonwealth*, 12 Va. App. 268, 271, 403 S.E.2d 384, 386 (1991). The trier of fact had no basis upon which to conclude that Burgess noticed the condition of the ignition at the time he was in the automobile. *See Reese v. Commonwealth*, 230 Va. 172, 174, 335 S.E.2d 266, 268 (1985).

Even if such an inference could be drawn, proof that a defendant knew that an automobile is stolen and was in the automobile as a passenger does not suffice to prove the defendant guilty of larceny of the automobile. *See Moehring v. Commonwealth*, 223 Va. 564, 568, 290 S.E.2d 891, 893 (1982).

The Commonwealth relies on the theory of joint exclusive possession of recently stolen property. But, giving the Commonwealth the benefit of all reasonable inferences, as we must, we conclude that the evidence fails to establish joint exclusive possession. There must be evidence of joint control to justify the inference of joint possession. The Commonwealth presented no evidence that [Burgess] exercised any degree of dominion or control over the [stolen vehicle.] The evidence of [Burgess's] mere presence in the stolen vehicle is not enough to support a conviction of [Burgess] as a princi-

pal in the second degree.

*Reese*, 230 Va. at 175, 335 S.E.2d at 268. *See also Nelson*, 12 Va. App. at 270-71, 403 S.E.2d at 386.

■ "[A] suspicion of guilt, however strong, or even a probability of guilt, is insufficient to support a criminal conviction." *Bishop v. Commonwealth*, 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984). The evidence does not prove beyond a reasonable doubt that Burgess exercised any degree of dominion or control over the vehicle or that he shared joint exclusive possession of the stolen vehicle with anyone. Accordingly, we reverse the larceny conviction.

*Affirmed, in part, and reversed and dismissed, in part.*

Barrow, J., concurred.

Moon, J., dissenting.

I concur in the opinion affirming the conviction for possession of cocaine. However, I dissent from the holding that the evidence was insufficient to convict the defendant of larceny of the vehicle.

"At common law, larceny was deemed to be a 'continuing offense' and 'is being committed every moment of the time during which the thief deprives the owner of the stolen property or its possession.'" *Hope v. Commonwealth*, 10 Va. App. 381, 387, 392 S.E.2d 830, 834 (1990) (quoting *Dunlavey v. Commonwealth*, 184 Va. 521, 525, 35 S.E.2d 763, 765 (1945)).

When the police arrived at 1:15 a.m. on December 12, 1990, in the parking lot of the McThrift Inn, Police Officer Mezo testified that Turner was behind the wheel of the vehicle and Burgess "was either getting in or getting out [of] it. . . . standing next to it with the door open with his arm on the window." The police approached the vehicle and questioned Burgess and Turner. They asked Burgess his name and he said that he was Robert Swift. When asked whose vehicle it was, Burgess said it belonged to Lewis Johnson, who had brought them in the vehicle to the McThrift Inn. Burgess said that he did not know where Johnson went. The police then discovered Burgess's true identity and that the vehicle belonged to Ann Smith, not Lewis Johnson. After the

police learned that the vehicle was stolen, Burgess told them that he did not know who Johnson was or where he lived. The automobile had been stolen nine days earlier by someone punching out the ignition so that it could be started with a screwdriver. This condition was apparent at the time the police arrived. An instrument of the type used to punch out the ignition was found in the trunk.

On appeal, we construe the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The trial court was not required to accept the defendant's statement as to how he came to be at a crime scene "simply because the defendant [explained it] that way and no witnesses testified to the contrary." *See Crumble v. Commonwealth*, 2 Va. App. 231, 236, 343 S.E.2d 359, 362 (1986) (quoting *Randolph v. Commonwealth*, 190 Va. 256, 263, 56 S.E.2d 226, 229 (1949)). "[A court] is not required to accept *in toto* an accused's statement, but may rely on it in whole, in part, or reject it completely." *Rollston v. Commonwealth*, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991) (citations omitted). Furthermore, where a defendant gives a false account of circumstances surrounding a crime, the trial court is entitled to infer that the defendant lied to conceal his guilt. *See Speight v. Commonwealth*, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (citations omitted).

Based upon the evidence, the trial court reasonably could have inferred the following: Burgess rode to the McThrift Inn in the stolen vehicle which had its ignition cylinder removed. The vehicle had to be started and operated with something other than the key. Burgess was standing next to the open passenger door of the vehicle when the police arrived. When questioned, Burgess first gave false identification to the police and told the police that the automobile belonged to Lewis Johnson, when in fact the automobile was stolen from someone else. The court could have inferred that the name Lewis Johnson was a fabrication and could have inferred that Burgess's false statements to the police were made to conceal from the police the fact that the vehicle had been stolen. The court further could have inferred that Burgess lied in order to facilitate the continuing larceny and to hide his own guilt.

Here, we have more than a defendant's mere presence at the scene of the crime. We have presence plus concealment of the crime and deception as to the defendant's true identity. The evidence was not only consistent with Burgess' guilt but inconsistent with his innocence. Thus, I believe the evidence was sufficient for a rational finder of fact to believe beyond a reasonable doubt that Burgess was, at a minimum, aiding and abetting in the continuing larceny. Since larceny is a continuing offense, any person assisting, aiding and abetting in the larceny is guilty of larceny. *See Speight*, 4 Va. App. at 89, 354 S.E.2d at 99.