# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

James Swartz

December 16, 2003.

Case Nos. (Criminal) K103426 and K103888

By Judge R. Terrence Ney

This matter comes before the Court on Defendant James Swartz's Motion to Suppress evidence seized from his home following its discovery during a police search incident to a home security alarm call.

*Facts*

On December 22, 2002, following a home security alarm call,[1] Officer Erica Slaight of the Fairfax County Police Department was dispatched to the residence of Defendant James Swartz in Vienna, Virginia.[2]

---

[1] Swartz testified at the suppression hearing that, on two prior occasions, the wind caused false alarms at his residence. See Testimony of James Swartz, September 5, 2003.

[2] Swartz testified that his contract with Cintron Security Services does not permit law enforcement officers to enter his home. The Commonwealth contends that the contract gives the alarm company permission to call the police, which Swartz admits. See Testimony of James Swartz, September 5, 2003. Neither party produced a copy of the contract.

Officer Slaight arrived at the residence at 6:00 p.m. Upon arrival, she saw no lights in the house and received no response to her knock at the front door or to the doorbell. Officer Slaight called for back-up, and Officer Lewis McClenahan arrived at 6:10 p.m.

Officer McClenahan walked around the side of the house and observed a broken garage window.[3] The officers continued around the house, investigating the doors and windows, at which point, Officer Slaight discovered an unlocked sliding glass door at the rear of the house.[4]

The officers opened the rear door and announced themselves before entering. With no response, the officers entered the house and drew their weapons.[5] The officers turned on the house lights and proceeded to search for intruders. Observing no evidence of ransacking, the officers then proceeded to the basement of the house. While searching the downstairs level, Officer Slaight observed in plain view marijuana plants and grow lights.

The officers continued to search the remainder of the house for intruders and/or victims. Not finding any evidence of criminal activity, Officers Slaight and McClenahan left the house, called for a narcotics detective to come to the scene, and waited outside for the detective to arrive.

While waiting for the detective, Swartz arrived at the house in his vehicle at 6:40 p.m.[6] Swartz got out of his car, approached the officers, and told them that he was the owner of the house, whereupon the officers asked him for identification. Swartz indicated that he did not have identification. When McClenahan asked him for his driver's license, Swartz responded that he did not have one. The parties differ as to whether Swartz said that his license was suspended or revoked.

Swartz then attempted to enter the house, but was prevented from doing so by Officer McClenahan. McClenahan told Swartz that he needed to wait outside and informed him that while responding to the alarm call, the police had "found some stuff in the basement." See Testimony of Officer Lewis

---

[3] Officer McClenahan testified that the size of the break in the window was large enough for a hand to pass through. See Testimony of Officer Lewis McClenahan, September 5, 2003.

[4] Swartz testified that the alarm cannot be activated unless all doors are secure. See Testimony of James Swartz, September 5, 2003.

[5] The defense emphasizes, and the Commonwealth does not dispute, that the officers did not contact the alarm company or any of Swartz's neighbors prior to entering the house.

[6] Swartz testified that the officers were leaving the house as he arrived. See Testimony of James Swartz, September 5, 2003.

McClenahan, September 5, 2003. When Swartz attempted to enter the house for a second time, the officers placed him in handcuffs.

The officers and Swartz remained outside to wait for the arrival of a narcotics detective. While waiting, Swartz made spontaneous statements that he "was going to jail" and "this must be five or six felonies."[7]

Due to the cold weather, and with Swartz's permission, the officers brought Swartz inside his home to wait for the narcotics detective.[8] The officers seated Swartz at the kitchen table where he remained handcuffed.[9] The officers did not ask any questions of, or otherwise speak to, Swartz before the arrival of the narcotics detective. See Testimony of Officer Lewis McClenahan, September 5, 2003.

Detective David Baucom of the Narcotics unit arrived at the house at approximately 7:00 p.m.[10] Upon arrival, Detective Baucom removed Swartz's handcuffs, sat down next to him, and read Swartz his *Miranda*[11] rights. The

---

[7] The defense disagrees with the order of events in the officers' testimony. Swartz testified that he was placed in handcuffs immediately after replying to the officers that his driver's license had been suspended. He then testified that, after placing him in handcuffs, Officer McClenahan said that "there's some things in your house that shouldn't be there," to which Swartz responded, "Oh God. You're going to get me for a couple felonies." See Testimony of James Swartz, September 5, 2003.

[8] Swartz stated that he was brought inside the house after approximately thirty minutes. See Testimony of James Swartz, September 5, 2003. Officer Slaight remembered twenty minutes. See Testimony of Officer Erica Slaight, September 5, 2003. Officer McClenahan said they waited outside for approximately ten minutes. See Testimony of Officer Lewis McClenahan, September 5, 2003.

[9] Swartz testified that, once inside his house, the officers informed him for the first time that they were investigating drugs that they had found and that a narcotics detective was expected shortly. See Testimony of James Swartz, September 5, 2003. This is inconsistent with defense counsel's argument on brief that Officer McClenahan told Swartz when he first arrived home that he was waiting for narcotics officers to arrive.

[10] The parties differ as to how much time had elapsed at this point. Swartz testified that Detective Baucom arrived approximately one hour after his arrival. See Testimony of James Swartz, September 5, 2003. Officer McClenahan testified, however, that only twenty minutes had elapsed between the time Swartz arrived home and the arrival of the narcotics detective. See Testimony of Officer Lewis McClenahan, September 5, 2003.

[11] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

Detective then went over the Fairfax County Police arrest form with Swartz, which he reviewed and signed, indicating that he understood his rights.[12]

Detective Baucom next asked Swartz for consent to search the house, to which Swartz responded, "Yes, go ahead."[13] Detective Baucom then asked if they would find any contraband, to which Swartz answered in the affirmative.[14] The police searched the house and found marijuana plants, cocaine, and related paraphernalia.

Swartz was placed under arrest and subsequently charged with one count of possession of a controlled drug with intent to distribute,[15] one count of manufacture of marijuana, one count of possession of a controlled drug, and one count of possession of a firearm while possessing a controlled drug.

Trial is set for February 10, 2004. On August 21, 2003, Swartz filed a Motion to Suppress evidence stemming from the search of his home and his detention and arrest. On September 5, 2003, the Court heard argument on this motion, taking the matter under advisement.

---

[12] Detective Baucom testified that Swartz indicated that he could read and write and that he was not impaired in any way. See Testimony of Detective David Baucom, September 5, 2003.

[13] The parties differ as to the content of Detective Baucom's questioning. On direct examination Swartz testified that Detective Baucom indicated that the police would obtain a search warrant and bring in a canine unit if Swartz did not cooperate and tell police where the drugs were located. Swartz further testified that, since he owned a cat, he was particularly averse to having dogs in his house. See Testimony of James Swartz, September 5, 2003. Conversely, Detective Baucom testified that he made no mention of a search warrant or canine unit in obtaining Swartz's consent. See Testimony of Detective Baucom, September 3, 2003. With regard to Detective Baucom's conduct, however, Swartz admitted on cross-examination that Detective Baucom did not threaten him or make any promises. See Testimony of James Swartz, September 5, 2003.

[14] Detective Baucom alleges that Swartz specifically responded that there were marijuana plants, hashish, and cocaine in his basement. Baucom had been informed of the presence of marijuana prior to arriving at the house.

[15] With respect to this count, on September 5, 2003, the Court granted the Commonwealth's Motion to Amend the Count I of the Indictment in Criminal Case No. 103426 from Possession of a Controlled Substance to Possession with Intent to Distribute a Controlled Drug.

*Analysis*

The issue before the Court is whether the police's initial warrantless search of Swartz's home in response to a home security alarm and subsequent search and seizure of drugs found in the home, constituted unlawful searches and seizure in derogation of Swartz's Fourth Amendment rights.

In addressing this issue, the Court is confronted with two separate searches of Swartz's home conducted by the police and thus must determine the constitutional validity of both (1) the initial search made by the police in response to the house security alarm call; and (2) the re-entry into the home by police after Swartz returned home, and the police's search for, and eventual seizure of, drugs and related paraphernalia.

### Police Search in Response to Alarm Call at Defendant's Residence

The Fourth Amendment affords protection against unnecessary intrusions into private dwellings by means of the warrant requirement imposed on agents of the government who seek to enter the home for purposes of search or arrest.[16] The right of the police to make a warrantless entry, absent consent, depends upon the existence of probable cause and exigent circumstances. *Keeter v. Commonwealth*, 222 Va. 134, 140-41, 278 S.E.2d 841, 845, *cert. denied*, 454 U.S. 1053, 102 S. Ct. 598, 70 L. Ed. 2d 589 (1981). If exigent circumstances exist, "a warrantless search must be strictly circumscribed by the exigencies which justify its limitation." *Mincey v. Arizona*, 437 U.S. 385, 393, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1970) (quoting *Terry v. Ohio*, 392 U.S. 1, 25-26, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)).

The burden is on the Commonwealth to establish an exception to the warrant requirement. *Walls v. Commonwealth*, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986). As all warrantless entries by the police into one's home are presumed to be unreasonable, when a warrantless entry into a residence is involved, "the Commonwealth has a heavy burden to justify the warrantless entry." *Reynolds v. Commonwealth*, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 1310 (1990).

---

[16] *Walls v. Commonwealth*, 2 Va. App. 639, 347 S.E.2d 175 (1986). "The Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Walls*, 2 Va. App. at 644, 347 S.E.2d at 178 (1986), citing *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980).

Here, the Commonwealth argues that the officers' warrantless entry into Swartz's home in response to an alarm call and subsequent discovery of a broken garage window and unsecured rear door were constitutionally permissible pursuant to the emergency, that is, exigent circumstances,[17] exception to the warrant requirement.

Conversely, Swartz contends that the mere activation of the house alarm did not constitute exigent circumstances. In addition, Swartz argues that the terms of his security contract with Cintron Security Services did not provide the police with any "implied consent" to justify or excuse the police's warrantless entry, search, and subsequent discovery of marijuana plants in the basement of his home.

In support of his arguments, Swartz relies primarily on the Court of Appeals of Virginia's decision in *Hargraves v. Commonwealth*, 37 Va. App. 299, 557 S.E.2d 737 (2002), where the Court overturned a conviction for possession of cocaine with intent to distribute based on the police's failure to obtain consent to investigate the defendant's home in response to an alarm call. Specifically, the Court held that "the dispatch of the police pursuant to a contract for home security and the sounding of the house's alarm, like the dispatch of the police to a crime scene, does not, without more, provide authority to conduct a full criminal investigation of the premises." 37 Va. App. at 312, 557 S.E.2d at 743.

In *Hargraves*, police officers received a call from dispatch regarding a report from ADT Security and were informed that a burglary alarm where Kevin Hargraves resided had been activated. Upon arrival, the officers found the alarm still sounding and discovered that the rear door had been broken open. After securing the premises, the police placed a K-9 dog in the home to check for persons inside. Once it was confirmed that no one was inside, the police entered the home and proceeded to conduct a full crime scene investigation of the entire residence, including dusting for fingerprints, taking photographs, and looking for evidence. The search eventually resulted in the discovery of cocaine and related paraphernalia in a nightstand drawer.

---

[17] Exigent circumstances arise where "law enforcement officers confront a compelling necessity for immediate action" that will not allow for the delay of obtaining a warrant." *United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir. 1995). One judicially recognized exigency, the "emergency doctrine," or "public safety exception," permits the warrantless entry of a home "when delay of obtaining a warrant [would] pose a threat to the safety of police officers or the general public." *United States v. Porter*, 288 F. Supp. 2d 716, 2003 U.S. Dist. LEXIS 19068 (W.D. Va., October 24, 2003).

In overturning Hargraves' conviction, the Court of Appeals held that a reasonable police officer could not infer a homeowner's consent to a full investigatory search solely from the existence of a security contract and the sounding of the home's alarm. Absent a warrant or consent, the Court of Appeals found that the police search of Hargraves' residence was unlawful and that the evidence obtained as a result was inadmissible.

This case, however, is not *Hargraves*. *Hargraves* is not dispositive given the circumstances presented here, nor as far-reaching in its effect on an officer's authority to conduct a warrantless search of a home.

First, in *Hargraves*, the officers conducted a *full crime scene investigation* after finding through the use of a dog no intruders in the home, an investigation which eventually led to the discovery of certain drugs. In contrast, the officers here *observed in plain view* marijuana plants and other related paraphernalia while personally conducting without the benefit of a prior inspection by a dog an immediate investigation of Swartz's home to check for intruders or victims on the premises. Apart from what the officers passively observed while conducting a protective sweep of Swartz's home, the police did not conduct any further investigation or search for drugs. Rather, the officers secured the scene and remained outside the home until Detective Baucom arrived at the residence.

Second, both federal and state courts, including the *Hargraves* court, have recognized the police's authority to conduct a warrantless protective search of a person's home under certain circumstances,[18] including in response to a reported burglar or home security alarm.[19]

---

[18] As the Court of Appeals noted in *Hargraves*, notification by a citizen of a possible crime in his or her home authorizes police to "make a prompt warrantless search of the area to see if there are other victims or if a [criminal] is still on the premises. *Hargraves v. Commonwealth*, 37 Va. App. 299, 311, 557 S.E.2d 737, 742 (2002), quoting *Mincey v. Arizona*, 437 U.S. 385, 392, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1970). The Court of Appeals further noted that to conduct a more extensive search of the citizens' home - as the police did in *Hargraves* - the Fourth Amendment requires a warrant, consent, or additional exigencies. 37 Va. App. at 311, 557 S.E.2d at 742-43.

[19] *United States v. Porter*, 288 F. Supp. 2d 716, 2003 U.S. Dist. LEXIS 19068 (W.D. Va., October 24, 2003); *see also Bilida v. McCleod*, 211 F.3d 166, 171 (1st Cir. 2000) ("[the policeman's] entry into the backyard in response to [a] silent security alarm is a perfectly good example of a perceived imminent threat" sufficient to justify absence of warrant); *United States v. Tilbot*, 72 F.3d 965 (1st Cir. 1995) (police responding to home security alarm were justified in entering residence without a warrant when the back door was unlocked and police feared burglar or

In its recent decision in *United States v. Porter*, 288 F. Supp. 2d 716, 2003 U.S. Dist. LEXIS 19068 (W.D. Va., October 24, 2003), the United States District Court for the Western District of Virginia held that the activation of an alarm, combined with no response to an officer's knocking at the door and an unlocked rear door, presented the type of exigency justifying the police's warrantless entry into the defendant's home. *Id.* With facts strikingly similar to those presented here,[20] the *Porter* Court noted that it would defy reason to require the officers to secure a warrant before being able to enter the home and leave the putative burglars or intruders free to complete their crime. *Porter*, 288 F. Supp. 2d 716, 2003 U.S. Dist. LEXIS 19068, at *14 (W.D. Va., October 24, 2003). Instead, a search restricted in scope to that necessary to determine whether a crime was in progress or whether a resident needed help "was exactly the type of police work the community would expect." *Id.* at *12.

Similarly, the *Hargraves* decision does not call into question the police's authority to conduct a protective sweep of a person's home in response to an alarm call, the lack of any express provisions in a home security contract notwithstanding. Rather, the *Hargraves* decision simply draws a line at *full investigatory searches* and states that in order for police "to conduct a more extensive search of the citizen's home, the Fourth Amendment requires a warrant, consent, or additional exigencies." *Hargraves*, 37 Va. App. at 311, 557 S.E.2d at 742-43.

In sum, the Court finds that public safety is a clear exigent circumstance justifying the police's entry into Swartz's residence in response to an alarm

---

possible injured persons were inside); *United States v. Johnson*, 9 F.3d 506, 509-10 (6th Cir. 1994) (officer's observation of broken window while responding to burglary report deemed an exigent circumstance); *United States v. Yi*, 1992 U.S. App. LEXIS 26387, 1992 WL 276935 (9th Cir., October 9, 1992) (exigent circumstance existed where burglar alarm sounded and police knocked at residence and received no response); *United States v. Dighera*, 2 F. Supp. 2d 1377, 1379 (D. Kan. 1998) ("it appears well-settled that responding to a burglary alarm . . . is an exigent circumstance authorizing the police to make a warrantless entry to a home."); *Ohio v. Scales*, 2002 Ohio 2506, 2002 WL 927369 at *2 (Ohio App. 5 Dist., April 29, 2002) (officer justified in making warrantless entry to home in response to alarm call upon finding broken screen, open door, and broken lock); *North Carolina v. Woods*, 524 S.E.2d 363 (N.C. App. 2000).

[20] In *Porter*, police responded to a home security alarm at defendant's residence. Upon entering, police conducted a protective sweep of the home to determine whether a crime was in progress or whether anyone inside needed help. While in the home, officers noticed in plain view bags of what resembled marijuana and substantial quantities of cash, which they later seized with a warrant.

call.[21] If the police have reason to believe[22] that someone might be hurt or that an intruder is on the premises, such as the officers did here, they are permitted to enter the premises to check for such activity.[23]

Moreover, the officers' entry was limited in scope and was initiated upon the belief that an intruder might be in the house. The officers did not conduct a full crime scene investigation of Swartz's home and therefore did not go outside the scope of the exigent circumstances in looking for an intruder. See *supra*. As such, the Court finds that the police officers' initial entry into the residence without a warrant or consent was valid and constitutional.

---

[21] *See Verez v. Commonwealth*, 230 Va. 405, 410-11, 337 S.E.2d 749, 753 (1985), where the Supreme Court of Virginia enumerated some of the exigent circumstances which are considered relevant in determining whether a warrantless entry into a dwelling is justified: (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether the officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

[22] Officers on the scene making a determination are not "required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight." *Keeter v. Commonwealth*, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981). In such circumstances, "they must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made." *Id.*

[23] *United States v. Tilbot*, 72 F.3d 965 (1st Cir. 1995) (police responding to home security alarm were justified in entering residence without a warrant when the back door was unlocked and police feared a burglar or possible injured persons were inside). *See also Warrensville Heights v. Hardin*, No. 72470, 1998 Ohio App. LEXIS 1065 (Ohio App. 8th Dist., March 19, 1998) (reversed and remanded on procedural grounds, the trial court held that "the purpose of a security alarm is to alert police to problems in order that they shall respond to the premises. . . . When a homeowner installs a security system to alert police, he must anticipate a police response and has consented and indeed encouraged the police to respond and search the premises for the cause of the alarm. Therefore, whether analyzed as a search based on exigent circumstances or consent, or a blend of the two, [a] warrantless search is valid.")

## Police Search Subsequent to Defendant's Alleged Consent

The Commonwealth contends that the police's re-entry, search, and eventual discovery of drugs in Swartz's home after the arrival of Detective Baucom were lawful, as the search was conducted pursuant to Swartz's lawfully obtained consent.

Swartz, on the other hand, argues that his consent to search was not voluntary in nature, but rather was obtained via coercive police tactics. Specifically, Swartz asserts that his consent to search was made only after being placed in handcuffs, told that the police had found "stuff" in his house, and made to wait outside in the cold weather for twenty minutes for the arrival of Detective Baucom.

In the alternative, Swartz argues that, even if his consent was voluntary, such was nonetheless tainted by the illegality of both the initial search of his residence and subsequent seizure over his person while waiting for Detective Baucom to arrive.

### Voluntariness of Consent

Where the validity of a search rests on consent, the state has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given. *Johnson v. Commonwealth*, 26 Va. App. 674, 496 S.E.2d 143 (1998). Although the burden is not satisfied by showing a mere submission to a claim of lawful authority,[24] the fact that a defendant is in custody at the time of consent does not itself invalidate the consent. *Jones v. Commonwealth*, 32 Va. App. 30, 526 S.E.2d 281 (2000).

Whether consent was voluntary is a question of fact to be determined in view of the totality of the circumstances. *Johnson v. Commonwealth*, 26 Va. App. 674, 496 S.E.2d 143 (1998). Probative factors include knowledge of the right to refuse consent,[25] the level of business sophistication, and the display of authority or show of force by the officer or officers involved. *Johnson v. Commonwealth*, 26 Va. App. at 688, 496 S.E.2d at 150 (1998).

---

[24] *Id.*, citing *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1982).

[25] In Virginia, police are not required to inform a suspect of his or her right to refuse to give consent to search. Notwithstanding, "the suspect's knowledge of this right to refuse falls within the totality of the circumstances the court must consider." *Deer v. Commonwealth*, 17 Va. App. 730, 735, 441 S.E.2d 33, 36 (1994).

In viewing the totality of the circumstances leading up to Swartz's consent, the evidence shows that upon his arrival to Swartz's residence, Detective Baucom removed the handcuffs from Swartz. Detective Baucom then sat down next to Swartz in the kitchen and read Swartz his *Miranda* rights. Detective Baucom testified that he went over every line of the Fairfax County Police Form with Swartz and that Swartz represented that he understood it. Swartz indicated to Detective Baucom that he could read and write and that he was not impaired in any way. Testimony of Detective Baucom, September 5, 2003. Swartz then initialed the paragraphs and signed the form.

Next, Detective Baucom asked Swartz for consent to search his house. Swartz replied "Yes, go ahead." *Id.* Baucom then asked Swartz if the police would find anything illegal, to which Swartz responded that there were marijuana plants growing in the basement and there was some cocaine on his work bench. *Id.* In addition, Swartz indicated that there was marijuana in the refrigerator along with some hashish.

Detective Baucom further testified that neither he nor the other officers made any threats or promises to Swartz,[26] nor did they display or draw any weapons. This latter point was not refuted by the Defendant. See Cross-Examination of James Swartz, September 5, 2003.

Lastly, the mere fact that Swartz was in custody and in the presence of officers at the moment he gave his consent to search is not alone sufficient to demonstrate a coerced consent to search. *Lowe v. Commonwealth*, 218 Va. 670, 677, 239 S.E.2d 112, 117 (1977) (although defendant was in custody, handcuffed, sitting on the floor and surrounded by his armed captors, and refused to sign waiver form, defendant's consent was not the product of

---

[26] Swartz testified that Detective Baucom threatened him with a search warrant or canine search of his house prior to obtaining his consent. Swartz further testified that he was concerned for the well-being of his cat should a canine be permitted into the residence to conduct a search and that such concerns impacted his decision to ultimately consent to the search of his home. Testimony of James Swartz, September 5, 2003. The Court does not find Swartz's testimony credible. Moreover, merely informing a suspect that police can obtain a warrant does not vitiate consent. *Deer v. Commonwealth*, 17 Va. App. 730, 441 S.E.2d 33 (1994). *Compare Crosby v. Commonwealth*, 6 Va. App. 193, 199, 367 S.E.2d 730, 733-34 (1988) (not consent to surrender key to apartment because police said they would otherwise obtain a search warrant), with *Bosworth v. Commonwealth*, 7 Va. App. 567, 571, 375 S.E.2d 756, 758-59 (1989) (consent held not to be a product of coercion when given subsequent to police statement that a search warrant could be obtained if K-9 dog responded positively to check of vehicle).

coercion). Based on the totality of the circumstances, the Court finds that Swartz's waiver of his rights and consent to search his home was "the product of an essentially free and unconstrained choice by its maker"[27] and thus lawfully obtained.

## Tainted Consent

Although consent to search may be given freely and voluntarily, the principle is well established that the fact that the consent was voluntary does not necessarily mean that it was sufficiently an act of free will so as to withstand constitutional scrutiny under the Fourth Amendment. *Wood v. Commonwealth*, 27 Va. App. 21, 497 S.E.2d 484 (1998); *Commonwealth v. Ealy*, 12 Va. App. 744, 407 S.E.2d 681 (1991).

Swartz, asserting that the officers' initial entry and search of Swartz's home was violative of his constitutional rights, contends that his consent, even if voluntarily given, must be suppressed as "fruit of the poisonous tree"[28] unless the Commonwealth can show that the consent was "sufficiently an act of free will to purge the primary taint of the illegal [search]." *Davis v. Commonwealth*, 37 Va. App. 421, 433, 559 S.E.2d 374, 380 (2002).

But, as previously discussed, the Court does not find that the police's initial entry and search of Swartz's residence in response to an alarm call violated Swartz's Fourth Amendment rights against warrantless searches, and was justified under the exigent circumstances exception to the warrant requirement.[29] As a result, the Court finds no evidence of illegality surrounding the officers' initial entry and search of Swartz's residence that would serve to "taint" or otherwise invalidate Swartz's later consent to search.

As the Court finds no evidence of illegality surrounding the officers' initial entry and search of Swartz's home, the Court declines to discuss the applicability of either the independent source doctrine or the inevitable discovery rule, both of which, if shown, provide means sufficiently distinguishable from any prior illegality so as to purge the primary taint.

## Validity of Swartz's Detention; Seizure or Arrest?

[27] *Id.*, 218 Va. at 678, 239 S.E.2d at 117.

[28] *Wong Sun v. United States*, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) (evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion).

[29] *See* discussion of initial entry and search of Swartz's home, *infra*.

Similarly, the Court finds no evidence of illegality surrounding the officers' detention/arrest of Swartz outside his residence that would serve to "taint" or otherwise invalidate Swartz's later consent to search. "Even if the Commonwealth discharges its heavy burden to prove voluntary consent, the Commonwealth must then establish that the consent was 'sufficiently an act of free will to purge the primary taint' of the illegal detention." *Davis v. Commonwealth*, 37 Va. App. 421, 433, 559 S.E.2d 374, 380 (2002), citing *Wong Sun v. United States*, 317 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

Although the evidence is not entirely clear as to the reasons the officers placed Swartz in handcuffs and detained him until the narcotics detective arrived,[30] the police had sufficient grounds for placing Swartz under arrest at

---

[30] Swartz asserts that at no time was he informed by the police as to why he was being detained and placed in handcuffs. Presuming that his detention was based on his driving without a license, a misdemeanor, Swartz contends that the police's warrantless detention of him constituted an unlawful seizure. Specifically, Swartz contends that, under the circumstances here the officers were statutorily required to simply issue Swartz a summons pursuant to § 19.2-74 of the Virginia Code and then release him, and that the officers' failure to do so constituted an unlawful seizure. In support of this contention, Swartz relies primarily on *Hunt v. Commonwealth*, 41 Va. App. 404, 585 S.E.2d 827 (2003), in which Court of Appeals held that the police search of Hunt's person subsequent to a non-custodial arrest was unlawful. In *Hunt*, the Court of Appeals reasoned that although the officer's non-custodial arrest of Hunt for trespass was lawful, the seizure became an *unlawful full custodial arrest* when the officer made an additional show of authority by telling the handcuffed Hunt that he would search him – with no other legal basis to search – and Hunt immediately submitted to that additional show of authority by admitting that he possessed a weapon. The Court of Appeals noted that § 19.2-74 of the Virginia Code, which mandates the release of persons arrested for Class 1 and Class 2 misdemeanors unless otherwise provided, does not permit a full custodial arrest, the latter of which is necessary to justify a search of an individual incident to arrest. The Court determined that the nature of the seizure changed when the police said they would search Hunt and Hunt admitted possessing a weapon. Similarly, Swartz contends that the officers' *lawful non-custodial arrest* of Swartz (presumably for driving without a license) was somehow converted into an unlawful full custodial arrest warranting suppression of the drug evidence. In considering whether and to what extent Swartz was seized in violation of the Fourth Amendment, the Court finds the facts in *Hunt* readily distinguishable from those in the present case and thus not dispositive of the issues raised here. For example, in *Hunt* the defendant was initially arrested for the *misdemeanor* offense of trespass, placed in handcuffs, and read his *Miranda* rights. The officer then later revealed his intent to search the

the time he arrived home. It is well settled that "if an officer has reason to believe that a person is committing a felony in his [or her] presence by possessing contraband or a controlled substance, the officer has probable cause to arrest the individual without a warrant." *Buck v. Commonwealth*, 20 Va. App. 298, 304, 456 S.E.2d 534, 537 (1995).

Here, Officer McClenahan, the arresting officer, knew or had reason to believe that Swartz was in possession of a sufficient quantity of drugs to evince an intent to distribute and/or manufacture drugs by virtue of the drugs he observed in plain view during his initial search of Swartz's home. As a result, the officers' detention of Swartz upon his return home was both statutorily and constitutionally permissible.

Even if the officers' detention and handcuffing of Swartz outside his home did not constitute a full custodial arrest but rather a mere investigatory stop,[31] such a distinction is of no consequence here. When Swartz identified himself as the owner of the residence and then twice attempted to walk past the officers and enter his residence, the officers were justified in handcuffing and temporarily detaining Swartz until Detective Baucom arrived.[32] Under

---

defendant and proceeded to ask the defendant questions. In response to the police's questioning, the defendant admitted to possessing a firearm and drugs on his person. By contrast, the Court finds that the police in the present case initially handcuffed Swartz based on probable cause that a felony had been committed or was in progress. This detention followed *two* attempts by Swartz to walk past Officer McClenahan and into his house. Moreover, the police testified that they did not question Swartz further, issue *Miranda* warnings, or indicate any intent to search either his person or residence after placing him in handcuffs while waiting for the arrival of Detective Baucom.

[31] The United States Supreme Court has delineated two types of seizures which implicate the Fourth Amendment, investigatory stops and arrests. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). To make a legal investigatory stop, an officer must possess a reasonable, articulable suspicion that "criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989). In order for an investigatory stop to be reasonable, the officer "must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. No "litmus test" exists for determining reasonable suspicion. *Harmon v. Commonwealth*, 15 Va. App. 440, 425 S.E.2d 77 (1992).

[32] An officer, while obeying the constitutional requirements of *Terry*, may stop, question, and physically detain an individual, if necessary. *See Burgess v. Commonwealth*, 14 Va. App. 1018, 1021-22, 421 S.E.2d 664, 666 (1992); *see also United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir. 1987), cert. denied, 484 U.S.

such circumstances, the physical detention and handcuffing·of Swartz were both reasonable and lawful. *United States v. Crittendon*, 883 F.2d 326 (4th Cir. 1989) (holding that the use of handcuffs during an investigatory stop is permissible to maintain the status quo or to protect the officer).

## Conclusion

In sum, the Court finds that the initial warrantless entry into Swartz's residence in response to an alarm call was constitutionally permissible under the exigent circumstances exception to the warrant requirement. In the absence of any illegality surrounding the police's initial search of Swartz's home and subsequent detention of Swartz, the drug evidence seized by police from Swartz's residence was lawfully obtained pursuant to Swartz's voluntary and "untainted" consent.

In addition, the Commonwealth noted several "spontaneous statements" made by Swartz about the drugs and his culpability prior to the arrival of Detective Baucom and the issuance of *Miranda* warnings. Based on the Commonwealth's representation that it does not intend to proceed on such statements, the Court does not opine on the circumstances giving rise to such statements or their admissibility at trial.

For these reasons, the Defendant's Motion to Suppress is denied.

## Order

This matter came before the Court on September 5, 2003, pursuant to Defendant James Swartz's Motion to Suppress. For the reasons stated in this Court's opinion letter dated December 16, 2003, which is attached hereto and made a part hereof, the Defendant's motion is hereby denied.

REPORTER'S NOTE: This opinion is cited in *Commonwealth v. Proseus* (2004), which is printed above at page 47.

---

965, 108 S. Ct. 456, 98 L.Ed. 2d 396 (1987) (stating that a brief but complete restriction of liberty is valid under *Terry*).